Estate of Peter D. Pecoulas, a/k/a Pericles D. Pecoulas, Deceased.

Peter Angelakos, Claimant-Appellee, v. John L. Alex, as Administrator of the Estate of Peter D. Pecoulas, a/k/a Pericles D. Pecoulas, Administrator-Appellant.

Gen. No. 52,311.

First District, Second Division.

July 9, 1968.

Peterson, Lowry, Rall, Barber & Ross, and Peter G. Anagnost, of Chicago (Peter M. Sfikas, of counsel), for appellant.

Elliott Kohn, of Chicago, for appellee.

MR. JUSTICE LYONS delivered the opinion of the court.

This is an appeal in a probate proceeding by respondent, John L. Alex, as administrator of the estate of Peter D. Pecoulas, deceased, from the entry of an order by the Circuit Court, after a full hearing on the evidence, allowing a claim in the decedent's estate in the amount of $1,500.

The cause of action on the debt as asserted below by petition was predicated upon certain alleged oral inter vivos loans made to the deceased by the petitioner-claimant, Peter Angelakos, which claim Angelakos purported to evidence by the production of three personal checks drawn in equal sums of $500 by the claimant to the order of the deceased and negotiated through blank endorsement by him (attached to petition as Claimant's Exhibit Nos. 1, 2 and 3). The case proceeded to a trial of the cause without objections to the pleadings of either party. The only questions raised by this appeal concern the propriety of the trial court's admission of the three checks into evidence over objection of respondent, and the

sufficiency of the evidence to otherwise support the allowance of the claim.

The extent of the evidence offered by the claimant consisted entirely of the testimony of one William Kilstrom. It was initially elicited from the witness that he and the claimant worked together, and that the claimant was related by marriage to decedent's niece. Kilstrom testified that on July 7, 1964, he had occasion, at his place of employment, to witness a conversation between the claimant and the deceased which was spoken in a mixture of the Greek and English tongues. The witness admittedly possessed no knowledge or understanding of the Greek language. Kilstrom related that subsequent to this conversation the two principals walked off to one side, approximately 20 feet away, and he saw the claimant write something on a small piece of yellow paper about the size of a personal check and hand it over to the deceased. Without elaborating further as to the details of the ostensible transaction, Kilstrom added that he had witnessed similar occurrences on October 3, 1964, and November 10, 1964, which dates, as he correctly observed, corresponded exactly to the respective dates subscribed on the three aforementioned checks then marked as exhibits for identification.

On further direct examination, Kilstrom stated that he could not identify any of the signatures appearing on the respective exhibits, be they those of the maker or the payee by endorsement. Asked if he knew whether the deceased had, in fact, borrowed money from the claimant, the witness responded, "I do not know, but Peter Angelakos told me he loaned money to Peter Pecoulas." Respondent made no objection to this statement. It was at this juncture in the lower court proceedings that the three checks were accepted into evidence, over respondent's objection addressed to the absence of a foundation for their admission.

442

On cross-examination, Kilstrom conceded that he could not identify Claimant's Exhibit Nos. 1, 2 and 3. He explained that he had neither overheard any particular sums of money being discussed nor had an opportunity to observe any of the writings made on the slips of paper. The witness reaffirmed his previous testimony that the deceased had never acknowledged an indebtedness to Angelakos in his presence relative to the events he had described. This was the extent of the evidence and testimony adduced at the trial.

It is manifest from the state of the record that the court below erred in admitting the three claimant's exhibits into evidence. The claimant endeavors to substantiate his position by reference to a suggested presumption favoring the authenticity of these documents, citing in addition the absence of any testimony by respondent to refute the genuineness of the signatures on the checks. By so doing, the claimant evidently chooses to ignore the distinction that his action is not one brought upon the checks as such, and otherwise governed by our Commercial Code (see Ill Rev Stats (1965) chapter 26, par 3–307(1)(a), (b)), but rather is a claim of indebtedness independently founded upon an oral agreement/s as is allegedly evidenced by the instruments upon which his case must rely. Hence, the admissability of the exhibits are to be adjudged from the standpoint of the ordinary rules of evidence controlling such circumstances.

While the court reposes confidence in the trial judge's apparent belief in the legitimacy of the claim itself, we are forced to the logical conclusion that the admittance of the exhibits was premised upon the erroneous assumption that respondent, by his failure to call any rebuttal witnesses, admitted to the authenticity of the checks. To the contrary, section 35(2) of our Civil Practice Act quite clearly states:

"The allegation of the execution or assignment of any written instrument is admitted unless denied in a pleading verified by oath, except in cases in which verification is excused by the court. If the party making the denial is not the person alleged to have executed or assigned the instrument, the denial may be made on the information and belief of that party." (Ill Rev Stats (1965) c 110, par 35 (2).)

██ ██ Here, the answer directed by respondent to the allegations of the petition was in all respects sufficient in form and content to deny and join issue as to the genuineness of the deceased's endorsing signatures on the checks. Neboshek v. Berzani, 42 Ill App2d 220, 191 NE2d 411 (1963). Moreover, by the clear import of the statute, the efficacy of that denial was in no way ameliorated by the fact that the answer and supporting affidavit were made upon the pleader's information and belief as to the truth of that allegation. Most importantly however, by respondent's denial, the issue crystallized, operating so as to destroy all of the legal presumptions which would have been otherwise indulged in with respect to the admitted execution, delivery and assignment of the instruments involved. In re Estate of Herr, 16 Ill App2d 534, 148 NE2d 815 (1958).

██ The claimant cannot avoid the consequences of his own inaction by now contending that respondent's verification did not meet the standards set forth by the statute. Suffice only to say that the claimant addresses objection to the form of the pleading for the first time on appeal and is accordingly deemed to have waived the defect, if it existed, for consideration on review. McGregor v. Thor Power Tool Co., 72 Ill App2d 24, 217 NE2d 822 (1966) ; In re Estate of Herr, supra.

██ It is thus abundantly evident that the claimant wholly failed to lay any foundation by testimony of identification and authenticity to warrant the admission

of these checks into evidence. Kilstrom apparently either did not overhear or possibly understand the substance of these conversations. He did not have an opportunity to observe the nature of the writing made by the claimant on the slips of paper, nor could he identify the signatures of the principals to the alleged transaction. Indeed, the witness conceded on cross-examination that he could not even identify Claimant's Exhibit Nos. 1, 2 and 3. It is equally apparent that the deceased had never acknowledged such an indebtedness in Kilstrom's presence. Absent these factors in the record, no competent and persuasive evidence appears to establish some relevancy between the checks drawn to decedent's order and the purported loans. This, as contended, was thus prejudicial to respondent's case.

In view of our conclusion, there remains very little evidence to support the claim. It would, however, appear that as a consequence of claimant's reliance on the erroneous admission of the exhibits into the record, additional available evidence as to the legitimacy of his claim had not been presented. In the interests of fostering a justiciable determination of the controversy, we think the cause should be remanded for a new trial to enable the parties to adduce this and any further evidence to support their respective positions.

For the above reasons, the order is reversed and the cause is remanded for further proceedings not inconsistent with the views expressed in this opinion.

Order reversed and cause remanded with directions.

BURKE, P. J. and McNAMARA, J., concur.